Thank you, Your Honor. May it please the Court, my name is Owais Qazi and I represent petitioners Mr. Asif Muhammed and his spouse, Ms. Farhana Asif. Your Honors, I would like to, if I may, approach the argument with discussion of the Board's decision to deny the motion and some contentions raised by the respondent in their brief together. And, of course, your questions are more than welcome. Continuation of same country conditions should not preclude a finding of changed circumstances. We see a lengthy discussion in the respondent's brief that petitioners' asylum application in 2003 and the 2014 motion to reopen had more of the same discussion of circumstances existing in Pakistan, in their native Pakistan. Your Honors, my opinion is that record reflects otherwise. The motion to reopen that was filed in 2014 included in the evidence a record that things have actually progressively worsened in Pakistan. There were country conditions reports, there were some articles, and most importantly, there was a sworn affidavit submitted by the petitioner. How do you, you say they've worsened, and they probably have, but the Salina case talks about it having to be a qualitatively different evidence that you put on, not just quantitative, it's bad, now it's a little bit worse, strikes me as a quantitative difference rather than a qualitative difference. How, what qualitative differences did you argue? Your Honor, the motion had argued that certain significant events took place post-2011 that were namely an increase in United States drone attacks in the territory of Pakistan, also the capture of the most wanted terrorist. So did you below argue the Osama bin Laden capture and drone attacks? It, it significantly worsened the situation where... But no, my question is, at first I was saying, yeah, they're worse, but you can't just say worse, you've got to show it's qualitatively different than you referred to Osama bin Laden and drones. So my question is, maybe those are different, maybe they're not, I don't know. But did you argue that below? Your Honor, it was presented as part of the evidence, but... I think the answer is no, isn't that correct? No, it's not, the previous counsel did not bring that up. Okay, thank you, thank you. So that, basically a showing of that exasperated their fear of persecution because they're tying that with the social visibility that they predict they will have because of being perceived as American or Western, having lived in the United States for so long. And they sort of tied that in with that evidence, Your Honor. Another issue was the personal circumstances, and I think this went to the materiality of evidence that was presented, that it was contended that petitioners have not failed, have failed to demonstrate that their fear and predicaments are appreciably different than the rest of Pakistanis. Your Honor, our opinion is that they are different, at least in the sworn affidavit. The petitioner presented the fear that they are going to be perceived as Western or American Pakistanis, having been away from Pakistan for almost two decades. So the violence inflicted on them by extremist groups, it could be demonstrated that it's different than what normal Pakistanis have to face, which is day-to-day violence. I was curious about that, too. Is that kind of a self-fulfilling prophecy, that if we can get into a country and overstay our visa in that country, then that is creating the evidence why we can't ever go back because there is hostility to the country we've gotten into? Is that allowing someone to create their own evidence of asylum? Your Honor, this, it may be arguable, Your Honor, this sort of develops over time where the country conditions reflect that. It doesn't happen in all the countries. This is a unique situation where there is... Well, it's probably not that unique, and there certainly are a lot of countries with animus against the U.S. for which you would be more at danger going back than if you hadn't left in the first place. Your Honor, I could create the presumption, but I think if the testimony or the evidence can be judged in combination, I think it could show that at least they did not intend to drag out this matter this long just so this ground could be developed. It's just the United States travel advisories, embassy notifications to Americans, or at least what my client argues, that they'll be perceived as such, that they are issuing those a lot more than before. So this is, at least this is what goes to the change in the circumstances, I suppose, in that regard. And Your Honor, the Board's denial, our issue with that is we acknowledge that case law, this Court has decided that the Board is not going to be, is not obligated to articulate every exegesis of every contention laid out in the petitioner's case, but at least they should make reference to and discuss that. And in this case, we feel that it was a summary dismissal where they said, okay, we have this case, evidence was presented, but we don't believe it satisfies the requirements for the motion to reopen. Your Honor, the case of Najmabadi at least is not favorable to my client, but in that case, the Board at least took into consideration the country conditions and made a reference to them, and then decided at the end, okay, this is not satisfying the material requirement of the motion to reopen. Here, there was no reference to anything, really. No evidence, no country conditions. I saw something, I think in the briefs, that there were children in this case. Are there children in the U.S.? Yes, Your Honor. If I may present these facts to you, petitioners have a 12-year-old U.S. citizen-born child. They have a 23-year-old son who's on deferred action, and they have a 24-year-old son who's a lawful permanent resident who will be applying for U.S. citizenship within the next year, and that opens up this possibility of applying for additional status for the parents if proceedings were terminated. And, Your Honor, this case was in mediation, and we were talking to the respondent for several months. At that time, it was a prosecutorial discretion candidate. Over time, the government decided that it's not. Been through mediation, and the government has decided that they're not going to exercise prosecutorial discretion. Towards the end, that's what the decision was, Your Honor. You want to reserve the rest of your time? Yes, Your Honor. Thank you so much. May it please the Court, I'm Lyle Jantzeff from the Department of Justice, Office of Immigration and Litigation. I represent the respondent this morning. Good morning. Can you lower the microphone? Hopefully I won't be too loud now. The Board did not abuse its discretion in denying petitioners untimely motion to reopen their proceedings based on changed country conditions because they didn't show changed country conditions. I did a little graph for myself, coming in here, comparing the asylum evidence and the motion to reopen evidence, and it's reasonably telling. In the asylum evidence, they claim that Pakistan frequently targeted U.S. citizens and U.S. and other Western interests, that bombings and assassinations were a constant danger. These are from the State Department reports. In his motion to reopen, he relies on State Department reports saying bombings and that they target U.S. citizens. In 2005 and 2006, according to the asylum application and his evidence, large anti-Western riots and demonstrations rocked Pakistan, targeting U.S. and other Western businesses, including Kentucky Fried Chicken, McDonald's, Citibank, and others, to include two he worked for, Caltex Oil and Shell Oil, which were Dutch and British concerns. In March 2006, a suicide bomber killed a U.S. Foreign Service officer with a car bomb, near the U.S. consulate in Karachi. The Department of State also importantly reported that trafficking in persons was a serious problem with men, women, and children being kidnapped and sold for sexual exploitation and domestic servitude. In his hearing, his asylum hearing, his U.S. citizen child had just recently been born. He doesn't appear in the asylum application. Apparently the child was born between the time the application was filed and the asylum hearing. What he did say, though, was he feared very much for the U.S. citizen child that he would be kidnapped or that he would be tormented in some way in Pakistan. That is exactly the same claim he is making now. In the asylum application, Amnesty International reported that following the 9-11 bombings, there was an upsurge of targeting killings of Westerners in Pakistan, including the Wall Street Journal's Daniel Pearl in 2002. The Pakistan Assessment in 2003 reported that in 2002, 11 French engineers were killed in suicide bombing. Several Western countries had to recall their non-essential staff. Terrorists attacked the U.S. consulate in Karachi. I understand your position that things were bad and they still are bad. But he had an American citizen child. He had all of this at the first go-around. Why did he lose then? What happened in the first asylum application, the immigration judge found that he was not credible. That had to do with a different issue on the MQM, a Tier 3 terrorist organization, which he belonged to, which he said was not violent. And the IJ and the board both found that was not credible. More importantly, though, or just as important, he filed his asylum application late. You normally have to file within one year. At his asylum hearing, he tried to show that there were changed circumstances in Pakistan, making it much worse than it was when he left. To justify his lateness. To justify the lateness. The immigration judge rejected that, saying no. But more importantly, when he appealed the case or petitioned for review to this court, this court found the same thing and echoed what the immigration judge said, that the conditions were no worse then than when you left. We have the exact same situation in this case. Now, we understand it's a burden for him, but that's not the burden of proof, or that's not the standard that this court has to apply. The bottom line is he has not shown qualitatively different evidence. And that's what this court requires. He's shown, as Your Honor, Abel said, quantitatively different. It's a little bit different now, or a little bit more now, but it's the same exact evidence. Great anti-American attitude in Pakistan. Foreigners being targeted. Crime running rampant. All of that was in the asylum application. There's just no difference now. Let me ask kind of a left field question that you can simply say you don't know the answer to. I noticed yesterday or today that Attorney General Sessions said that on the provision where you can seek asylum because of membership in a social group, that you cannot assert that merely because other social groups are oppressing you. You have to prove that it is official government oppression. Now, I don't know whether that's yet official policy, but was that statement by the Attorney General yesterday? Because here he's alleging a lot of his oppression comes not from the government, but from this MQM and other private organizations. So does Sessions' statements impact us at all? I believe they do. I did not read a newspaper this morning. I did not hear what my boss said yesterday. But the way the law always was is that the government either is the oppressor or they're unable or unwilling. And that's what I believe the petitioner is saying here, that they're unable or unwilling. I also, Ilana, I don't think the petitioner is saying MQM would now go after him. He just believes that the climate in Pakistan is so terrible with all the anti-American, all the anti-foreign influence and the Islamic fundamentalist doing a lot of things that it would be very bad for his children. The Attorney General, obviously, he makes, he sets the policy for oil, and I will not, I have not read it, but even if I had, that is the policy I have to follow since he is not setting it. Can Asif claim a right to asylum here because of a risk to his children if he goes back, or does he have to prove the risk is to himself uniquely? Well, I think he filed, his children and his wife were derivative petitioners, so it is danger to them. So if he proves that he's under no more danger at all, but if he says, look, these Pakistanis do not like people born in the U.S. to come into their country, so I'd be okay, but my child isn't, and therefore I want asylum, that would be a valid legal argument. I believe it would. It is important to note that the two older sons who we claimed in the asylum application, they're under DACA right now, so they can stay. The younger son is a U.S. citizen. Now, it's a tough choice and the government understands that, but that child does not have to go back to Pakistan ever. That child can stay in this country, and that, as harsh as that sounds, being separate from parents, that's exactly the case in all cancellation cases. That's the case the court faces and that the IJs face and that the petitioner faces. He's got the choice. He has said he will take the child back, but he doesn't have to. Further, there's nothing to prevent him from finding a third country that he could go to. He doesn't have to return to Pakistan. He has to leave the United States, but if he can find somewhere else that would take him, he's free to go there. So the choice isn't quite that terrible for him. He's got options. He's just got to figure out what he wants to do. Let me just ask you about something that you said with regard to General Sessions. You said you have to follow policy, but for the future you do, but are you suggesting that you can now assert a policy that was not the policy at the time of this hearing? No. No, not whatsoever, Your Honor. Okay. I would also hasten to add that this court or any other court can overrule what the Attorney General has done. That happens frequently. Right. I have not read the Attorney General's statement. I believe it's probably in line with what the law was before. The unable and unwilling to change. But to the extent it's a change, it wouldn't affect this case at all. No, it wouldn't affect this. But it doesn't matter because there really is no case here. Yeah. In the government's view. I understand. Subject to your further questions, I see I'm almost out of time. I thank the Court for its consideration. Have a nice day, please. Thank you, Your Honor. I'll just be very brief with a couple of points. The upsurge in violence can be seen as changed circumstances. This Court has looked at that in Salim v. Lynch. And that's what the Petitioners have argued here. Your Honor, aside from the credibility issues in his asylum application, which was found to be incredible, a Petitioner in the Soren Affidavit raised a particular social group ground that people positioned in similar situations bring some sort of social visibility to be perceived as Americans, even though they don't have status, but they've lived here for so long and have had connections prior to. Your Honor, as far as the hardship is concerned for the 12-year-old, counsel is right that government looks at he doesn't have to go. But usually in hardship cases, the hardship is looked at in two scenarios. If the person who's to experience hardship is separated or has to go with their parents, for example, in this case. So it's assessed in both ways to determine if there's extreme hardship or not. Anything else? That's all, Your Honor. Thank you so much. Thank you very much, counsel. Thank you to both counsel for their argument in this case. This matter is submitted. We'll move on to the next case, United States v. Quackenbush.
judges: Ebel, Schroeder, Owens